TOMASA ROMÁN, Plaintiff and Appellee, *v.* HEIRS OF LUIS GONZÁLEZ-DOMICH, Defendants and Appellants.

No. 4442. Argued June 15, 1928.—Decided June 20, 1928.

*Buenaventura Esteves* for the appellants. *E. Martínez Avilés* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for the acknowledgment of a natural child. The complaint is sufficient. It sets up not only one but several grounds to support the acknowledgment. The answer denies the facts on which the acknowledgment is based and pleads the defense of laches. The case went to trial and the court rendered judgment in favor of the plaintiff accompanied by a statement of the case and opinion from which we transcribe the following:

"The trial of this case took place on July 21, 1927, in the presence of the parties and their respective attorneys. Documentary and parole evidence was introduced and the case was finally submitted for judgment.

"About the year 1906 in a ward of Camuy Luis González Domich and Tomasa Román, both being single and without impediments to contract marriage, began intimate relations of a marital nature. González was the owner of a farm on which Vicente Vélez lived with his wife and children in a small house. By an express order of González Vélez built an extra room annexed to the house in which he lived. At the request of González, Tomasa Román went to live in the house of Vélez and occupied the room so built. González visited her frequently and especially at night, remaining to sleep with her. They had sexual relations as a result of which Tomasa became pregnant. Three months passed and then González went personally to see Luisa Herrera who had been living for 14 years in concubinage with Maximino González, a brother of Luis, and rented from her a room for Tomasa Román who at the request of González went to live with Luisa Herrera. There González Domich continued visiting her both during the day and at night, without interrupting their marital relations. No other person lived with her and she received a daily allowance for her support from González Domich. Then on the 8th of November, 1907, Tomasa Román gave birth to a child, having been attended by Monserrate Pérez who had been engaged for the purpose by González Domich who personally paid her for her services to Tomasa Román and charged her to take care of the child until its mother recovered. The child was registered in the Registry of Births by the name of Avelino Román, natural son of Tomasa. González Domich continued visiting them, attending to the needs of the mother and child, and specially commissioned Luisa Herrera to christen the child, which she did acting as godmother. He also told her that if ever Tomasa left the house she should remain with the child and he would help her to support it. Later the relations between González Domich and Tomasa Román reached a crisis and were broken. The child was left under her care in the home of Luisa Herrera. The boy was known by the name of Ramón and by the pet name of Moncho González. Luis González Domich sent him clothes, shoes and hats; visited him, called him his son, blessed him and fondled him; and when he went to school for the first time told him to give his name as González, which he did, and by that name he was known in the schools. He encouraged him to study and promised to send him to college for higher studies.

When in 1921, fifteen years later, González Domich became dangerously ill the boy went to see him every day and was at his bedside when he died. These are the facts proved by the plaintiff. They are not contradicted by the evidence of the defendants. This is confined to showing that González Domich always lived with his family and was never known to have had a sweetheart or concubine.

"The evidence shows as an irrefutable fact that Luis González Domich had extramatrimonial sexual relations with Tomasa Román and that these intimate relations continued until the birth of the boy Avelino Román, generally known as Ramón González, and even thereafter. We are convinced that Luis González Domich was his father. This conclusion is reached after considering all of the evidence introduced. Tomasa Román, the mother of Ramón, lived in houses where she had been expressly taken by Luis González Domich, and there is scarcely any doubt that the latter took care of her or contributed to her support even after the birth of Ramón, or that he treated Ramón privately and publicly as his son and provided for all his needs. The frank and open testimony of the witnesses for the plaintiff, especially that of Luisa Herrera, Monserrate Pérez, Casiano Franki and Manuel Herrera, by the manner of expression and their conduct on the witness stand, leaves in the mind of the court no other impression than the firm belief that Avelino Román, always known by the name of Ramón González, is the son of Luis González Domich born of Tomasa Román while both were single and with capacity to marry, as well at the time of conception as at the birth of the child.

"And if Avelino Román or Ramón González was conceived under such circumstances and was born on November 8, 1907, the question of his acknowledgment is governed by the provisions of section 189 of the Revised Civil Code then in force which reads in part as follows:

" 'A father is obliged to recognize his illegitimate child in the following cases:

"    *         *         *         *         *         *         *

" '2. When publicly or privately he has shown that it is his child, or has called it as such in conversation, or looks after its education and maintenance.

" '3. When the mother was known to have lived in concubinage with the father during the pregnancy or birth of the child, or when the child was born while his parents were engaged to be married.' (*Sic.*)

"According to the evidence it may be said that Luis Gonzalez Domich and Tomasa Román did not live in concubinage nor bear amorous relations. He had an independent home of his own. There is nothing to show that they had the intention to marry or were engaged to be married. Medina v. Heirs of Bird, 30 P.R.R. 151; Busigo v. Heirs of Tejera, 33 P.R.R. 575. The present case, therefore, does not fall within subdivision 3 of section 189 cited. But it may be asserted that, according to the evidence, Luis Gonzalez Domich acknowledged publicly and privately that the boy was his son and the case falls within the second subdivision.

"The plaintiff here was born at a time when isolated acts of acknowledgment, if sufficiently proved, were sufficient to establish a legal status. Mercado v. Heirs of Mangual, 35 P.R.R. 388. The evidence of these acts in the present case is convincing. From the time of the birth of Ramón his father took upon himself to establish that legal status, placing the child while he was of tender age under the care of Monserrate Pérez during the recovery of the mother; requesting and succeeding in having Luisa Herrera christen the child and finally to take charge of it; providing for its needs while under the care of Luisa Herrera; calling the boy his son and calling attention to his likeness in the presence of Carmelo Vales; blessing him and calling him his son, encouraging him to study and offering to give him a chance to go to college for a higher education in the presence of Casiano Franqui; repeating similar acts in the presence of Manuel Herrera; going even so far as to tell the plaintiff himself of that relationship. These acts, which are more than isolated acts, almost constitute an uninterrupted relationship between father and son. And if it is shown that the father has acknowledged publicly or privately that the boy is his son, or has spoken of him as such in conversation, or has attended to his education and support, he is entitled to acknowledgment as a natural child. Cruz v. Quiñones, 31 P.R.R. 323. This is similar to the present case.

"The defendants allege as special defense that an action bearing on this same subject was brought, abandoned and dismissed, several years having elapsed without taking any steps for its prosecution. The action referred to is case No. 6700 on filiation and partition of inheritance, brought in behalf of the plaintiff by his mother on October 20, 1921, and dismissed *motu proprio* by the court on March 15, 1923, on a motion to strike made by the defendants and never set, argued or decided. It does not appear that the plaintiff was given an opportunity to appear and show cause why the

case should or should not be dismissed by the court. What is certain is that this dismissal was ordered without the knowledge of the plaintiff. The new action was brought on June 18, 1926. But 'In Porto Rico if through abandonment or neglect actions are not brought within the periods of time expressly determined by the Legislature they are forever barred, and only these periods of time should be taken into account by the trial court.' Alcaide v. Morales, 28 P.R.R. 258, 273. In the present case, according to the law, the time of prescription has not elapsed. Between the two actions, both prosecuted by the plaintiff through his mother, three years and three months had only elapsed. The plaintiff was under age at the time of the filing of both complaints, and the time within which his action could be brought had not elapsed. At this writing the plaintiff is still a minor. We do not see how the doctrine of laches can apply in the present case in order to hold that there has been negligence on the part of the plaintiff who being a minor can not appear personally in court but through the person with *patria potestas* over him, in order to defeat his action in equity."

The defendants appealed to this Supreme Court and assign three errors.

In the first assignment it is contended that the court erred in not filing with the judgment a written opinion as required by Act No. 25 of 1925.

From an examination of the statement of the case and opinion, a large part of which is transcribed, the conclusion is reached in the light of the statute invoked that the law was substantially complied with. The trial judge set forth the facts as found by him, although not in paragraphs duly separated and numbered. Nor can it be contended that he failed to state the grounds on which he based his decision in favor of the plaintiff. And when the said act is substantially complied with this court has held in several cases that it is sufficient.

The second assignment of error is as follows:

"2.—The district court committed manifest error and acted with marked prejudice in weighing the evidence in the present case: (a) in finding that the plaintiff's evidence was sufficient to sustain the allegations of his complaint and to establish a case of acknowl-

edgment of natural child; and (b) in holding that the evidence of the defendants does not contradict that of the plaintiff." .

The appellants have filled seventeen pages of their brief in discussing this assignment. In our opinion they are wrong. The proof of the alleged concubinage was not necessary. Nor was it necessary to prove the amorous relations in the usual sense, that is, those that precede the marriage or the promise of marriage. It is sufficient to prove, as was done, in a strong and convincing manner that Luis González Domich, the ancestor of the defendant heirs, had sexual relations with plaintiff Tomasa Román as a consequence of which the boy Avelino Román, known as Ramón González, was born and that his father looked after, supported and acknowledged him as his son in the manner set forth by the trial judge.

It is true that some contradictions appear in the evidence, but they are not of such a nature as to discredit it. Great emphasis is laid in the brief and again in the argument on the contradiction which appears between the date of the birth of the child as testified by the midwife and that shown by the register.

It seems to us that on this point the appellee in her brief and in answer to the appellants has expressed herself with ingenuity and, as it generally occurs when that line of conduct is adopted, with effect, in saying:

"It is sought to impeach the credibility of witness Monserrate Pérez, because she had said that the child was born at dawn on the eve of St. Monserrate day. According to attorney Esteves, St. Monserrate day is on September 8. The certificate of birth of Avelino Román submitted in evidence shows that the child was born on November 8 at five in the afternoon. The judge accepts the official certificate and concludes that the child was born on November 8. There is a difference of two months. We are inclined to believe that Monserrate Pérez is right. Tomasa Román went to have the child registered on December 31. Under the law she was bound to register it within sixty days. If she had declared to the officer in the registry that it was born on September 8 she would have been liable to be punished. It was perhaps owing to that fear that

Tomasa Román, as frequently happens, did not tell the truth in that respect. What is certain is that she was not called by the defendants as a witness to testify in that respect and to explain away the contradiction which appeared between her statement to the officer in charge of the civil registry of Camuy on December 31, 1907, and the testimony of Monserrate Pérez."

As regards the contention that the judge committed error in finding that there was no contradictory evidence on the part of the defendants, it seems to us that the judge explains satisfactorily the compass of his assertion. If the evidence for the defendants is examined carefully it will be seen that it does not contradict directly the concrete facts brought out by the evidence of the plaintiff. It shows in a general way that González Domich was a man of good habits, that he never married and always lived with his relatives and that he was not known to have had a sweetheart or a concubine, he being of delicate constitution and retiring disposition. The fact that he was so considered does not necessarily destroy the facts of the sexual relations, of the birth of the child as a result and of the acknowledgment.

The last assignment is that the court erred in not sustaining the defendants' defense of laches.

What is said in the opinion of the trial judge is sufficient. But even if the defense of laches could be pleaded without the lapse of the statutory time for bringing the action, the circumstances would not show in any way an abuse of discretion on the part of the judge. On the contrary. The jurisprudence on the matter says:

"There is no artificial or hard-and-fast rule either as to the lapse of time or the circumstances which will justify the application of the doctrine of laches. The question must be determined by a consideration of all the facts and circumstances of the particular case. Laches is a question of fact, on the evidence, and each case becomes largely a law unto itself. In other words, the matter is one which reposes in the sound discretion of the chancellor." 10 Cal. Jur. 526.

By virtue of the foregoing the appeal is dismissed and the judgment appealed from affirmed.